**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DORIS WILLIAMS,<br><br>        Plaintiff,<br><br>v.<br><br>COMPASSIONATE CARE HOSPICE,<br><br>        Defendant. | Civil Action No.: 16-2095 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of the Motion to Dismiss filed by Defendant Compassionate Care Hospice of Northern NJ, LLC under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the Motion to Dismiss.

## **FACTUAL BACKGROUND**[1]

Plaintiff Doris Williams is an African American female who was hired by Defendant as a certified nurse aide on May 19, 2015. (ECF No. 9 ("Am. Compl.") ¶¶ 5, 12.) Defendant is a medical hospice based out of New Jersey, and conducts business in the counties of Sussex, Morris, Passaic, and Somerset. (*Id.* ¶ 3.) Via letter dated May 29, 2015, Defendant advised Plaintiff that its offer of employment was "contingent upon successful clearance of a criminal background check

---

[1] This background is derived from Plaintiff's Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

1

and a driving record review." (ECF No. 13-2, Declaration of James P. Flynn ("Flynn Decl."), Ex. D).)[2] On May 31, 2015, Plaintiff began working for Defendant, when she attended an orientation program. (Am. Compl. ¶ 6.)

On June 3, 2015, Defendant terminated Williams after the background check revealed a driving while intoxicated conviction, a drug ordinance violation, and a previously suspended driver's license. (*Id.* ¶ 7.) Defendant claimed that Plaintiff's criminal history disqualified her from employment, in accordance with Defendant's employee handbook. (*Id.* ¶¶ 8, 9.) However, Plaintiff alleges the handbook only disqualifies an employee if "the operation of a motor vehicle is an essential duty of the position," and that operation of a motor vehicle is not an essential duty of a certified nurse aid. (*Id.* ¶¶ 10, 11.)

Plaintiff alleges that, because she is an African American, Defendants must comply with Equal Employment Opportunity Commission ("EEOC") Enforcement Guidance Number 915.002[3] "or in the alternative comply with the federal law to prevent the use of disparate impact discrimination while using an African American's criminal history in their hiring process." (*Id.* ¶ 12.)

---

[2] Although this letter is not explicitly attached to or referred to in Plaintiff's Amended Complaint, the Court finds that it may consider the letter without converting the instant motion into one for summary judgment. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (holding that on a motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint," or "undisputedly authentic documents" if the complaint is predicated upon them (internal citations omitted)). Since the letter sets forth the terms of employment, including the criminal background check and driving record review which form the basis of this action, the Court believes that the letter is "integral" to the complaint.

[3] EEOC Enforcement Guidance Number 915.002, *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964* (Apr. 25, 2012) (hereinafter "EEOC Guidance 915.002"), *available at* https://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf (last accessed on July 28, 2016).

## PROCEDURAL HISTORY

On June 19, 2015, Plaintiff filed charges of discrimination against the Defendant with the EEOC. (Am. Compl. ¶ 14.) The EEOC then provided Plaintiff with a right-to-sue letter on February 11, 2016. (*Id.* ¶ 19.)[4]

On April 15, 2016, Plaintiff commenced this action by filing a one-count Complaint, alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, premised on a theory of disparate impact resulting from Defendant's use of the criminal background check. (ECF No. 1.) In response to a motion to dismiss (ECF No. 8), Plaintiff filed the operative Amended Complaint on May 31, 2016, which likewise sets forth a single violation of Title VII. (ECF No. 9.) Plaintiff seeks equitable and monetary relief, including an "order that the Defendant hire the Plaintiff," as well as compensatory and punitive damages, and attorneys' fees. (*Id.* at 7-8.)

On June 28, 2016, Defendant filed the instant Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 13-1 ("Mov. Br.").) On July 14, 2016, Plaintiff filed an opposition (ECF No. 14 ("Opp. Br.")), and on July 25, 2016, Defendant filed a reply (ECF No. 15 ("Reply Br.")). The matter is now ripe for adjudication.

## LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

---

[4] Plaintiff alleges that she received the right-to-sue letter on February 11, 2015—approximately four months prior to the date she filed charges. The Court therefore presumes that she received the right-to-sue letter on February 11, 2016.

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements the plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations and internal quotations omitted). Stated differently, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)) (internal quotations omitted).

The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

1. <u>Standard</u>

Title VII is intended to ensure that "the workplace [is] an environment free of discrimination, where race is not a barrier to opportunity." *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). It endeavors "to promote hiring on the basis of job qualifications, rather than on the basis of race or color." *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971) (quoting 110 Cong. Rec. 7247 (1964)). In furtherance of this objective, Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(2). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci*, 557 U.S. at 577.[5]

"Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (citing *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987 (1988); *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998)). The statute provides:

> An unlawful employment practice based on disparate impact is established . . . only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged

---

[5] As an initial matter, the Court notes that Plaintiff has not stated a claim for disparate treatment. For example, the Amended Complaint does not mention "disparate treatment," and Plaintiff failed to oppose Defendant's motion to dismiss any potential disparate treatment claim. (*See* Mov. Br. at 11; Opp. Br.) Accordingly, the Court discusses only whether the Amended Complaint sufficiently states a claim for disparate impact.

5

>> practice is job related for the position in question and consistent with business necessity[.]

42 U.S.C. § 2000e–2(k)(1)(A)(i). "By enacting § 2000e–2(k)(1)(A)(i), Congress allowed claims to be brought against an employer who uses a practice that causes disparate impact, whatever the employer's motives and whether or not he has employed the same practice in the past." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 217 (2010).

Disparate-impact litigation proceeds in three steps. *See N. Hudson*, 665 F.3d at 476. First, a plaintiff must establish a *prima facie* case by "demonstrat[ing] that application of a facially neutral standard has caused a 'significantly discriminatory hiring pattern.'" *Bayonne*, 134 F.3d at 121 (quoting *Newark Branch, NAACP v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir. 1991)). This *prima facie* showing requires the plaintiff to prove a significant statistical disparity and to "demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking." *Id.* (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989)). Second, the employer may defend against a *prima facie* showing of disparate impact only by demonstrating that the challenged practice is "job related for the position in question and consistent with business necessity." *See* 42 U.S.C. § 2000e–2(k)(1)(A)(i). The Third Circuit has "interpreted the business-necessity defense to mean that employers may not use criteria which have a discriminatory effect unless those criteria define the minimum qualifications necessary to perform the job." *N. Hudson*, 665 F.3d at 477 (citations and footnote omitted). "Finally, a plaintiff can overcome an employer's business-necessity defense by showing that alternative practices would have less discriminatory effects while ensuring that candidates are duly qualified." *N. Hudson*, 665 F.3d at 477 (citing 42 U.S.C. § 2000e–2(k)(1)(A)(ii), (C)).

As Defendant concedes (*see* Reply Br. at 7), only the first step is at issue in the instant motion—*i.e.*, whether Plaintiff has sufficiently pled that a facially neutral employment policy

resulted in a significantly disproportionate or adverse impact on members of the affected class. For purposes of a motion to dismiss, a plaintiff "must point to a specific employment policy or practice, and must present proof that the employment policy or practice resulted in disproportionate impact on the protected class." *Bratek v. TD Bank, N.A.*, No. 11-3049, 2012 WL 603299, at *6 (D.N.J. Feb 22, 2012) (citing *Town of Harrison*, 940 F.2d 792 at 798) (internal citation omitted).

2. Plaintiff Has Sufficiently Stated a Plausible Disparate Impact Claim Sufficient to Survive the Motion to Dismiss

Defendant primarily argues that Plaintiff has failed to allege facts showing that Defendant's challenged criminal background check policy results in unfavorable treatment of a disproportionate number of African Americans. (*See* Mov. Br. at 7-8; Reply Br. at 2-5.) Defendant contends that the six-year-old national statistics utilized in EEOC Guidance 915.002 (and relied on by Plaintiff) are insufficient to demonstrate a significant adverse effect on African Americans as a result of Defendant's criminal background check policy, in the New Jersey counties in which Defendant operates. (*Id.*) In opposition, Plaintiff acknowledges that EEOC Guidance 915.002 does not have the force of law, but argues that she has sufficiently alleged a specific policy (the background check) and its disproportionate impact on African Americans. (Opp. Br. at 4-8.)

The Court agrees with Plaintiff. When accepting all factual allegations in the Amended Complaint as true, and construing them in a light most favorable to Plaintiff, the Court finds that Plaintiff has stated a claim sufficient to survive the instant Motion to Dismiss. Plaintiff has specifically identified the policy at issue that allegedly results in disparate impact (the criminal background check), and has further alleged that the employment practice "operates to exclude African Americans." (*See* Am. Compl. ¶¶ 28, 31.)

First, Plaintiff has specifically identified the policy at issue—the blanket criminal background check. *See Texas Dept. of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2523 (2015) ("[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing the disparity.") Plaintiff has thus distinguished her complaint from those of other litigants whose claims were dismissed at the motion to dismiss stage. For example, in *Graves v. Ancora Psychiatric Hosp.*, an African American female nurse was terminated from her job and filed suit under Title VII. No. 10-369, 2012 WL 6153428, at *4 (D.N.J. Dec. 10, 2012). However, the district court granted defendant's motion to dismiss because Graves had only referenced "discrete *incidents*" as opposed to "specific *policies*" that resulted in discrimination. *Id.* (finding Plaintiff's failure to reference "specific *policies* that resulted in discrimination against members of a protected class" to be fatal to her claim.) Similarly, in *Bratek*, the court granted Defendant's motion to dismiss because "Plaintiffs did not point to any specific employment policy or practice in their Complaint." *Bratek*, 2012 WL 603299, at *7. Here, unlike the plaintiffs in *Graves* and *Bratek*, Williams specifically points to Defendant's background check and driving record review as an allegedly discriminatory policy affecting a protected class.

Second, Plaintiff has specifically alleged that the employment policy or practice resulted in a disproportionate impact on African Americans. (*See* Am. Compl. ¶¶ 28, 31.) Plaintiff relies on EEOC Guidance 915.002 in support of her position. EEOC Guidance 915.022, in turn, advises that "[a]n employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII . . . ." (EEOC Guidance 915.002 at 1.) "With respect to criminal records, there is Title VII disparate impact liability where the evidence shows that a covered employer's criminal record

8

screening policy or practice disproportionately screens out a Title VII-protected group . . . ." (*Id.* at 9.) The EEOC Guidance examines national data, which "supports a finding that criminal record exclusions have a disparate impact based on race and national origin." (*Id.* at 9-10.) Although the Court agrees with Defendant that the statistics are not tailored to the New Jersey counties in which Defendant does business, the Court finds that they lend sufficient support to Plaintiff's allegations to survive the Motion to Dismiss.

This is especially true because a Title VII disparate impact claim need not allege statistical support to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (noting that the Supreme Court "has never indicated that the requirements for establishing a prima facie case under [Title VII] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss" and that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case"); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) ("[A]t least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss. A *prima facie* case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim." (internal citations and quotation marks omitted)); *Jenkins v. New York City Transit Auth.*, 646 F.Supp.2d 464, 469 (S.D.N.Y.2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery.").

The Court reiterates that at this early stage of the litigation, it must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Shenango*, 810 F.3d at 127. Because Plaintiff has specifically pointed to the policy at issue and alleged that it results in a disparate impact, the Court finds that she may be entitled to relief, and that discovery is needed to ultimately determine the merits of Plaintiff's claim. To be clear, the Court has no opinion on whether Plaintiff "will ultimately prevail" on her claims, but simply finds that the Amended Complaint sufficiently shows a plausible claim to relief such that Plaintiff is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins*, 659 F.3d at 302. Accordingly, the Court will deny the instant motion to dismiss and revisit the issues raised in due course.

## CONCLUSION

For the reasons above, the Court denies the Motion to Dismiss. An appropriate Order accompanies this Opinion.

DATED: August 3rd, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE